IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ANTWON R. MONROE, | ) | |
| Petitioner, | ) | No. C 09-2665 CRB (PR) |
| | ) | |
| vs. | ) | ORDER DENYING PETITION |
| | ) | FOR A WRIT OF HABEAS |
| | ) | CORPUS |
| KAMALA HARRIS, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Antwon R. Monroe, a post-disposition probationer in the custody of the Contra Costa County Department of Probation, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging multiple convictions for sexual offenses from the Solano and Contra Costa Counties Juvenile Courts. For the reasons set forth below, the petition will be denied.

**STATEMENT OF THE CASE**

On October 11, 2006, a petition was filed in Solano County Juvenile Court alleging that Monroe committed two counts of forcible oral copulation pursuant to California Penal Code § 288a(c)(2), three counts of forcible lewd acts upon a child under age 14 pursuant to California Penal Code § 288(b)(1), and one count of forcible sodomy pursuant to California Penal Code § 286. Docket #13 at 2.

After a bench trial, Monroe was found guilty on all counts except forcible sodomy, which was dismissed.  Id.  Following a contested jurisdictional hearing, Monroe was transferred to Contra Costa County Juvenile Court for sentencing.  Id.  In accordance with California Welfare and Institutions Code § 602, Monroe was adjudged an indefinite ward of the court, ordered to be removed from the custody of his mother, and sentenced to fourteen years and four months in the custody of the California Department of Juvenile Justice at a residential sex offender treatment facility.  Id.

On February 1, 2007, Monroe filed a notice of appeal as to his conviction on the second count of forcible oral copulation and on the third count of forcible lewd acts upon a child under age 14.  Id.  On appeal, Monroe claimed that there was insufficient evidence to support said convictions, but did not claim either prosecutorial misconduct or ineffective assistance of trial counsel in those proceedings.  Id. at 2-3.  The California Court of Appeal affirmed both convictions on the ground that the trial court's findings were supported by "substantial evidence."  Docket #24, Exhibit C.

Monroe then petitioned the California Supreme Court for review of the two convictions affirmed below, seeking to exhaust his claim of insufficiency of the evidence in accordance with 28 U.S.C. § 2254(b)(1).  Docket #13, Exhibit A. The California Supreme Court denied review.  Docket #13, Exhibit B.

On September 21, 2009, Monroe filed the instant habeas corpus petition, seeking federal collateral relief from all five of his aforementioned state court convictions.  Docket #8.  The Court screened the petition and found that, liberally construed, it appeared to present colorable claims of insufficiency of the evidence, prosecutorial misconduct, and ineffective assistance of both trial and appellate counsel under 28 U.S.C. § 2254.  Docket #12.  The Court ordered

respondent, the Attorney General for the State of California, to show cause why a writ of habeas corpus should not be granted.  Id.[1]

On April 22, 2010, respondent instead moved to dismiss the petition on the grounds that Monroe only exhausted his claim of insufficiency of the evidence in the state courts, and only as to the two counts that were reviewed on direct appeal.  Docket #13.  Monroe contended that his failure to exhaust available state remedies as to all claims and convictions should be excused under the "cause and prejudice" exception to the exhaustion doctrine because of the ineffective assistance of his appellate counsel.  Docket #14 and 16.  The Court found that because there was no "clear" procedural bar to exhausting his claims of prosecutorial misconduct and ineffective assistance of counsel in state court, Monroe's claim of cause and prejudice was at best premature.  Docket #18 (citing Castille v. Peoples, 489 U.S. 346, 351 (1989); Park v. California, 202 F.3d 1146, 1151-52 (9th Cir. 2000)).  In accordance with Ninth Circuit precedent regarding petitions containing both exhausted and unexhausted claims, the Court ordered that Monroe either voluntarily dismiss his unexhausted claims and proceed with his exhausted claim or voluntarily dismiss the entire petition without prejudice. Id.  Ultimately, Monroe chose to forgo his unexhausted claims and proceed on his claim of insufficiency of evidence as to the two counts he appealed in the state courts.  Docket #22.  The Court again ordered respondent to show cause why a writ of habeas corpus should not be granted.  Docket #23.

On March 7, 2011, respondent filed a response to the Court's order to show cause, contending that under the "highly deferential" standard of review imposed by 28 U.S.C. § 2254(d)(1), the California Court of Appeal's rejection of

---

[1]The Court sua sponte amended the respondent named on the petition from former Attorney General Edmund G. Brown to current Attorney General Kamala Harris in accordance with Federal Rule of Civil Procedure 25(d).

1  Monroe's insufficiency of the evidence claims was not an "objectively

2  unreasonable" application of or "contrary to" clearly established Supreme Court

3  precedent.  Docket #24 at 4, 7-8.  Monroe filed a traverse, reasserting that he also

4  received ineffective assistance from his trial and appellate counsel, despite

5  having voluntarily dismissed these still unexhausted claims.  See Docket #27.

6

7                              **STATEMENT OF THE FACTS**

8          The California Court of Appeal summarized the facts of the case as

9  follows:

10         The offenses were committed upon two victims, Jocelynn and
           Brenda, during two separate incidents that occurred a year apart.
11         Defendant challenges only the sufficiency of the evidence to support
           the findings on the offenses committed upon Brenda. [Footnote
12         omitted.]

13         The Offenses Committed upon Brenda (Counts Five and Six)

14         On October 9, 2005, Brenda, then age 12, was at Corbus Field in
           Vallejo High School watching her brother's football game and
15         "hanging out with friends." She had been "friends" with defendant
           Antwon for two or three years, and never had "any problem" with
16         him in the past.  Defendant approached Brenda and asked her to "go
           for a walk" behind the stadium bleachers.  He said that he "wanted
17         to talk," so Brenda followed him to the back of a "shed-like thing"
           about 30 feet away.  Once they were behind the shed defendant told
18         her "he wanted to get sucked."  Brenda testified that she repeatedly
           said "no."
19
           When Brenda attempted to walk away, defendant pulled her by the
20         hand back to the shed and pushed her to the ground.  Brenda's back
           was "pinned" against the shed and her "knees were down" on the
21         ground. Defendant said that he "wanted a blow job." He then "pulled
           down his pants and shorts and pulled out his penis." With one hand
22         on Brenda's shoulder and the other behind her head, defendant
           pushed her face "towards his crotch" and forced her to "give him a
23         blow job." Brenda "kept telling him no" or "stop," and "tried to get
           up" or push defendant away, but he had her "pinned down." Brenda
24         was "scared," and "didn't know what to do." She did not scream for
           fear that defendant would hit her.
25
           After about five minutes, Brenda's friend [Jocilee] came around the
26         corner and called Brenda's name.  Defendant allowed Brenda to get
           up.  Brenda testified that she was "not sure" if [Jocilee] had "seen
27

28                                            4

1   anything."

2   Brenda walked directly to the bathroom, crying. [Jocilee]
    accompanied her and asked "what was wrong." Brenda told [Jocilee]
3   that defendant "attempted to, but [she] didn't tell her that anything
    happened." [Jocilee] "rubbed" Brenda's back, perhaps to get some
4   "dirt off of it."

5   Brenda was "scared to tell anybody" about the assault. When some
    of her friends asked about it at football games, Brenda only told
6   them that defendant "tried to make her do it," but not that she had
    "given a blow job" to him.  Brenda was afraid to tell her father what
7   happened because of "what he might have thought" of her.  She also
    "didn't want all of this to happen, the court and everything."  Not
8   until a year later, after Brenda's friend Jocelynn told her that she had
    been sexually assaulted by defendant, did Brenda disclose to
9   Jocelynn the next day "what had happened between [her] and
    Antwon." Brenda's father subsequently confronted her "about this,"
10  and she finally told him about the incident.

11  [Jocilee] testified for the defense that she had known Brenda for four
    years, and was "close friends" with defendant.  She recalled that on
12  October 9, 2005, she, Brenda, Antwon, and two other friends, Leon
    and Ja., were "behind the bleachers" at Vallejo High School.  Leon
13  and Ja. were "trying to convince [Brenda] to give them a blow job."
    They "called over Antwon" to "see if he wanted one too." At first,
14  they were "joking around," but then Brenda seemed to be "seriously
    considering it." She told them, "Hold on, I'm thinking." Brenda
15  finally said "only one of you, and she chose Antwon." According to
    [Jocilee], Brenda "willingly walked" behind a portable shed with
16  defendant.

17  About five minutes later, [Jocilee] yelled that the "junior midget
    team is coming." Brenda came out from behind the shed, crying and
18  upset, with one of her hands up to her face.  She also had dust on her
    clothing. [Jocilee] helped to get napkins for Brenda, which she used
19  to wash her mouth.  [Jocilee] did not "see what happened behind the
    shed."
20
    Defendant testified that he was walking under the bleachers to the
21  snack bar at Corbus Field when he noticed Leon and Ja. talking to
    Brenda "about getting blow jobs." They asked if he "wanted one."
22  Brenda "agreed to it," but said "she only was going to do one,"
    defendant.  After they walked behind the shed defendant asked
23  Brenda if she was "sure she wanted to do it." He testified that
    Brenda "said yes, so then she took down my pants and she gave me
24  head." Leon then yelled, "The junior midget team is coming," so
    they left and went back into the stands.  Defendant denied that he
25  used any force, violence or threats on Brenda.  He thought she was
    "consenting to do this."
26

27

28                                         5

## The Offenses Committed upon Jocelynn (Counts One, Two, and Four)

Jocelynn was 13 years old when she met defendant briefly while she was at cheerleading practice at Solano Middle School.  Defendant called Jocelynn the next day, and during the conversation he "started talking about sex." She requested that they "talk about something other than that." Defendant then asked Jocelynn if she "would want to go out with him," to which she replied, "I don't know."

The following afternoon, Sunday, October 1, 2006, Jocelynn encountered defendant and his friend R. at Corbus Field.  After a brief conversation defendant said, "come with me, I've got to tell you something important." Defendant directed Jocelynn to the back of the "portables," and suggested, "Let's go back there." When they got behind a green wall defendant "pulled down his pants," "took out his penis," and asked her to "suck it." When Jocelynn began to walk away, he grabbed her hair, pushed her head down and put her "mouth on it." Jocelynn "spit it out" and again tried to leave, but defendant grabbed her wrist and pushed her against the wall. Defendant twisted Jocelynn's arms tightly behind her back and pinned her to the wall. He then pulled down Jocelynn's pants and tried to "stick it in" her "butt." Jocelynn screamed and moved around, which prompted defendant to call her a "bitch" and yell at her, "Shut up." Jocelynn made another attempt to run away, but defendant hit her in the face and grabbed her hair.  He once more pushed her mouth onto his penis while she hit his arms and yelled at him to stop.  Defendant hit Jocelynn in the face two more times, then "pulled up his pants" and "ran off."

Jocelynn pulled up her pants and ran back to the side of the portables, where she met R.  She asked him if he "heard anything." R. warned her that if she "told anybody, his family and his friends are going to hurt [her]." Jocelynn observed defendant "going towards Corbus Field," so she walked the other way.

Jocelynn was scared, so she did not report the assault until the next day, when she spoke to her school counselor.  The police were called, and interviewed Jocelynn. FN3

> FN3. Jocelynn testified on cross-examination that a reference in the police report to her statement that defendant "tried to stick his penis into her vagina" was "not true," as she "said butt" in the interview rather than vagina.

R. testified that he was friends with both defendant and Jocelynn. He recalled the incident on October 1, 2006, that began as he and defendant were walking to Vallejo Middle School.  Defendant declared to R. that Jocelynn "was going to suck him."  Defendant and Jocelynn then walked "right next to each other" behind a building, while R. stayed on the other side of the portable talking on his cell phone.  R. did not hear any screaming or noise from the

other side of the building.  Later, they came out at the same time, "but separated."  Defendant announced, "I got sucked," and walked alone toward Corbus Field.  Jocelynn was walking by herself, so R. asked, "Are you cool?" She responded, "Yeah, I'm fine." R. testified that Jocelynn did not appear to be scared or angry.

Defendant testified that Jocelynn offered to give him "a blow job" during their phone conversation, and he accepted.  The next day, he and R. were playing catch under the bleachers of the football field when Jocelynn appeared.  As they walked to the portables at Vallejo Middle School defendant told R. he "was going to get a blow job." According to defendant, Jocelynn consensually gave him a "blow job" behind the portables for about three minutes.  Suddenly, she "just stopped" and said "she couldn't do it right now."  Defendant "said all right," whereupon Jocelynn asked if defendant "had a condom" and "wanted to have sex with her."  Defendant answered no to both queries.  Defendant denied that he struck Jocelynn in any way, grabbed her by the wrists, twisted her arms, threatened her with violence, or otherwise forced her to engage in oral sex.  He also denied that he attempted to sodomize her.

In re Antwon M., No. A117119, 2008 WL 806932 at *1-3 (Cal. Ct. App. March 27, 2008).

## DISCUSSION

I.      Standard of Review

        The Court may entertain a petition for a writ of habeas corpus "[i]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

        The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong of section 2254(d) applies both to questions of law and to mixed questions of fact and law,

Williams v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently then [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

A state court decision "[b]ased on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  See Y1st v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

///

8

II.     <u>Claims & Analysis</u>

The only claim properly before this Court is Monroe's claim that his Fourteenth Amendment due process rights were violated because there was insufficient evidence to support his convictions for forcible oral copulation and for forcible lewd acts upon a child under the age of 14 as to Brenda.  Specifically, Monroe claims that there was insufficient physical or testimonial evidence to establish the use of force or the threat thereof, a substantive element of both crimes under California Penal Code sections 288a(c)(2) and 288(b)(1).  Monroe argues that the oral copulation between himself and Brenda was consensual and without physical compulsion, as evidenced by his own testimony and the corroborating testimony of Brenda's friend, Jocilee.  He notes that Brenda's testimony at trial was inconsistent with her prior statements made to police investigating her complaint.

The Due Process Clause "[p]rotects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim which, if proven, entitles him to federal habeas relief.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 321, 324 (1979).

A federal court reviewing a collateral challenge to a state court conviction does not determine whether the evidence established guilt beyond a reasonable doubt.  <u>Id.</u> at 318-19; <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court determines only "[w]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). The Jackson standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. Sarausad v. Porter, 479 F.3d 671, 678-79 (9th Cir. 2007).

On habeas review, a federal court evaluating the sufficiency of the evidence under Winship and Jackson should take into consideration all of the evidence presented at trial. LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006). If confronted by a record that supports conflicting inferences, a federal habeas court "[m]ust presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. Credibility determinations by a trier of fact are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal habeas court to revisit credibility determinations. Id. at 957-58.

Under 28 U.S.C. § 2254(d), a federal habeas court applies Jackson and Winship with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the operative state court decision "[r]eflected an 'unreasonable application' of Jackson and Winship to the facts of the case." Id. at 1275 (citing 28 U.S.C. § 2254(d)(1)).

Here, the California Court of Appeal rejected Monroe's insufficiency of the evidence claim on the ground that there was "substantial evidence" to support the convictions for forcible oral copulation and forcible lewd acts upon a child under the age of 14 as to Brenda:

> We proceed with our review from an indisputable principle:
> Brenda's testimony alone is adequate to support the findings on
> counts five and six. She testified that after defendant announced
> that "he wanted to get sucked," she repeatedly said "no" and

10

attempted to leave. Defendant pulled her back to the shed, pushed her to the ground, and pinned her down. According to Brenda, she "tried to get up," but defendant pulled her face "towards his crotch" and compelled her to orally copulate him. She repeatedly implored him to "stop," but he continued to push his penis into her mouth. Brenda also testified that she was afraid defendant would hit her if she screamed. Her testimony establishes the requisite element of force or fear. (See *People v. Neel* (1993) 19 Cal.App.4th 1784, 1790; *People v. Babcock* (1993) 14 Cal.App.4th 383, 388.) FN4

> FN4. " '[I]n order to establish "force" within the meaning of [Penal Code] section 288, subdivision (b), the People must show "defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." [Citation.]' [Citation.]" (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 939.)

Defendant's contention may be thus distilled down to a claim that Brenda's testimony lacks credibility and must be disregarded. If so, he maintains that the remaining evidence of force or fear is not substantial. In his challenge to the victim's testimony, defendant directs our attention to the lack of any corroborating evidence from other witnesses, her delay in reporting the crimes, the "different versions" of the incident reported by Brenda, and the testimony of victim's friend [Jocilee], who asserted that Brenda "willingly" committed the acts.

While we agree with defendant that without Brenda's testimony the findings on counts five and six cannot stand, in our restricted role as reviewing court we do not resolve evidentiary conflicts or credibility issues. (*People v. Mejia* (2007) 155 Cal.App.4th 86, 93.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal .4th 342, 403; see also *People v. Lewis* (2001) 26 Cal.4th 334, 361; *People v. Franz* (2001) 88 Cal.App.4th 1426, 1447.) "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* [(2005)] 34 Cal.4th 1149, 1181; see also *People v. Panah* (2005) 35 Cal.4th 395, 489; *People v. Jackson* (1992) 10 Cal.App.4th 13, 21.)

We acknowledge that inconsistencies and weaknesses in Brenda's testimony appear in the record, but they are not so glaring or pervasive that we must reverse the juvenile court's decision for lack of evidentiary support.  The victim plausibly explained the reasons for her delay in reporting the incident until a similar assault by defendant upon her close friend Jocelynn a year later: concern with her father's reaction, and fear of appearing in court.  Brenda's accounts of the encounter were also not critically inconsistent with

her testimony at trial that the acts were committed forcibly. Although J. testified that when Brenda emerged from behind the shed she stated "it was consensual at first," the witness also acknowledged that Brenda's appearance and behavior – upset, crying, undertaking efforts to wipe herself clean and wash her mouth – seemed to suggest otherwise.  Brenda may have declined to discuss the matter with others thereafter, but she never professed that the encounter was consensual.  At most, when questioned by friends about it, Brenda divulged that defendant "tried to make her" give him "a blow job," but she did not do it.  Her statements to others did not conflict with her description of the event at trial.  As to J., who asserted her belief that Brenda voluntarily engaged in an act of oral copulation with defendant, her testimony cannot be credited on appeal simply because it contradicts the evidence in support of the judgment, regardless of how persuasive defendant suggests it is.  (*People v. Lewis*, *supra*, 26 Cal.4th 334, 361; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.)  Finally, Brenda's testimony is at least slightly corroborated by the strikingly similar assault on Jocelynn, which suggested a common scheme or plan on defendant's part to commit forcible sex offenses.  (See *People v. Balcom* (1994) 7 Cal.4th 414, 425; *People v. Ewoldt* (1994) 7 Cal.4th 380, 396; *People v. Erving* (1998) 63 Cal.App.4th 652, 659-660.)

We cannot disregard the victim's testimony in the present case. """To be improbable on its face the evidence must assert that something has occurred that it does not seem possible could have occurred under the circumstances disclosed." . . . "'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. . . .  To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. . . ."'"  (*People v. Franz*, *supra*, 88 Cal.App.4th 1426, 1447, quoting from *People v. Mayberry* (1975) 15 Cal.3d 143, 150.)  At most, the record reveals discrepancies in the testimony of the witnesses that do not, in our view, subject Brenda's account of the critical events to repudiation or impossibility of belief.  (*People v. Cantrell* (1992) 7 Cal.App.4th 523, 538.)  Upon consideration of Brenda's testimony we conclude that the evidence in support of the judgment, while not overwhelming, is at least substantial.

In re Antwon M., 2008 WL 806932, at **4-6.

The California Court of Appeal's rejection of Monroe's insufficiency of the evidence claim was not an "objectively unreasonable" application of Jackson and Winship.  See 28 U.S.C. § 225(d); Juan H., 408 F.3d at 1275.  The state

12

appellate court reasonably determined that there was sufficient evidence to support Monroe's convictions for forcible oral copulation under California Penal Code § 288a(c)(2) and for forcible lewd acts upon a child under the age of 14 under California Penal Code § 288(b)(1), as to Brenda.

Under California Penal Code § 288, "[a]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." Cal. Penal Code § 288(a). If the felony described in subdivision (a) is accomplished "[b]y use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person," then the offender "shall be punished by imprisonment in the state prison for 5, 8, or 10 years." Id. § 288(b)(1). "Force" is defined within the meaning of subdivision (b) as "[p]hysical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." People v. Neel, 19 Cal. App. 4th 1784, 1790 (1993). In other words, "'the element of force . . . is intended as a requirement that the lewd act be undertaken without the consent of the victim' (citation omitted)." People v. Perez, 182 Cal. App. 4th 231, 243 (2010).

Under California Penal Code § 288a, "[a]ny person who commits an act of oral copulation upon a person who is under 14 years of age, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 8, 10, or 12 years." Cal. Penal Code § 288a(c)(2). "Oral copulation" is defined as "[t]he act

of copulating the mouth of one person with the sexual organ or anus of another person."  Id. § 288a(a).

Monroe does not dispute that Brenda was under 14 years of age at the time of the incident or that he copulated her mouth with his penis for the purpose of his sexual gratification.  He only disputes that he used force or the threat thereof.  Specifically, Monroe claims that there was insufficient evidence to establish that he used force or the threat thereof under either section 288(b)(1) or section 288a(c)(2).  Monroe's claim is without merit.

The California Court of Appeal correctly noted that because Brenda's testimony alone is adequate to support the findings on the counts of forcible oral copulation and lewd or lascivious acts upon a child under the age of 14, Monroe's claim may be "distilled down to a claim that Brenda's testimony lacks credibility and must be disregarded."  In re Antwon M., 2008 WL 806932 at *4.  But unfortunately for Monroe, it is well-established that Jackson does not permit a federal habeas court to revisit credibility determinations absent exceptional circumstances and there are no such circumstances here.  See Bruce, 376 F.3d at 957-58 (credibility contest between victim alleging sexual molestation, despite defendant's vehement denial of allegations of wrongdoing, is not a basis for revisiting a trier of fact's credibility determination); see also People of the Territory of Guam v. McGravey, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).  As did the California Court of Appeal, the Court must accept Brenda's testimony that she repeatedly said "no," attempted to leave, and that Monroe "pushed her to the ground" and "pinned her down" in response to her attempted departure.  In re Antwon M., 2008 WL 806932 at *4.

Monroe is not entitled to federal collateral relief on his insufficiency of the

1   evidence claim.  After viewing the evidence in the light most favorable to the

2   prosecution, it simply cannot be said that no rational trier of fact could have

3   found the element of force that underlies both crimes beyond a reasonable doubt.

4   See Jackson, 443 U.S. at 319.  And it certainly cannot be said that the California

5   Court of Appeal's rejection of Monroe's insufficiency of the evidence claim was

6   an "objectively unreasonable" application of Jackson and Winship.  See 28

7   U.S.C. § 225(d); Juan H., 408 F.3d at 1275.

8                               **CONCLUSION**

9           For the foregoing reasons, the petition for a writ of habeas corpus is

10   DENIED.  And pursuant to Rule 11 of the Rules Governing Section 2254 Cases,

11   a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED

12   because petitioner has not demonstrated that "reasonable jurists would find the

13   district court's assessment of the constitutional claims debatable or wrong."

14   Slack v. McDaniel, 529 U.S. 473, 484 (2000).

15           The clerk shall enter judgment in favor of respondent and close the file.

16   SO ORDERED.

17   DATED:   June 23, 2011                    _____

18                                              CHARLES R. BREYER
                                                United States District Judge

19

20

21

22

23

24

25

26

27          G:\PRO-SE\CRB\HC.09\Monroe, A1.merits.wpd

28                                       15